**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KALEENA PROCTOR**,

    *Plaintiff,*

    v.

**BANK OF AMERICA
CORPORATION, JPMORGAN
CHASE BANK, N.A., EXPERIAN
INFORMATION SOLUTIONS,
INC., EQUIFAX INFORMATION
SERVICES, LLC,** *and*
**TRANS UNION LLC,**

    *Defendants.*

Case No:    8:24-cv-409

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, Kaleena Proctor ("**Ms. Proctor**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, Bank of America Corporation ("**BOA**"), JPMorgan Chase Bank, N.A. ("**Chase**"), Experian Information Solutions, Inc. ("**Experian**"), Equifax Information Services, LLC ("**Equifax**"), and Trans Union LLC ("**Trans Union**"), (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Ms. Proctor against all Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**") and

against Chase and BOA only for violations of the ***Florida Consumer Collection Practices Act***, § 559.55, Fla. Stat., *et seq*. ("**FCCPA**").

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction for Plaintiff's FCRA claims arises under 28 U.S.C. § 1331, as the FCRA is a federal statute and the relevant transactions were committed within Hillsborough County, Florida.

3.     This Court has supplemental jurisdiction over Plaintiff's FCCPA claims under 28 U.S.C. § 1367, as such claims are part of the same case or controversy as Plaintiff's FCRA claims.

4.     The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat., and Fed. R. Civ. P. 4(k).

5.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/ or caused by the Defendants within the Middle District of Florida.

## PARTIES

6.     Ms. Proctor is a natural person who at all times relevant has resided in Hillsborough County, Florida and whose domicile is in Tampa, Hillsborough County, Florida.

7.     Ms. Proctor is a Consumer as defined by 15 U.S.C. § 1681a(c) and § 559.55(8), Fla. Stat.

8.      BOA is a Delaware corporation whose Florida registered agent is CT Corporation Systems, 1200 South Pine Island Rd., Plantation, FL 33324.

9.      Chase is an Ohio National Association whose Florida registered agent is CT Corporation Systems, 1200 South Pine Island Rd., Plantation, FL 33324.

10.     Chase and BOA are furnishers of information to multiple Consumer Reporting Agencies ("CRAs"), including Defendants Equifax, Experian, and Trans Union, in that they regularly report account data on both consumer and commercial business credit lines.

11.     Experian is an Ohio corporation with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

12.     Experian is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 32301.

13.     Equifax is a Georgia limited liability company, with a principal business address of 1550 Peachtree Street NW, H-46, Atlanta, GA 30309.

14.     Equifax is registered to conduct business in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

15.     Trans Union is a Delaware limited liability company, with a principal business address of 555 West Adams Street, Chicago, IL 60661.

16.    Trans Union is registered to conduct business in the State of Florida, where its registered agent is, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

17.    Experian, Equifax, and Trans Union are all CRAs within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that they, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

18.    Sometime prior to February 2019, an unknown person(s) opened a BOA credit card account and a Chase credit card account (the "**Accounts**") using Ms. Proctor's name, Social Security number, address and other personal information.

19.    The BOA account had a credit limit of $2,000.

20.    The Chase account had a credit limit of $1,000.

21.    The unknown person(s) made one or more purchases on both Accounts.

22.     At no point did Ms. Proctor receive monthly account statements from BOA or Chase.

23.     BOA and Chase furnished information regarding their respective accounts to each of Equifax, Experian and Trans Union.

24.     Ms. Proctor learned of the fraudulent accounts in 2019, as a result of the credit reporting, and immediately disputed both.

25.     BOA and Chase were therefore aware, at least as early as 2019, that the Accounts were not legitimate.

26.     Despite Ms. Proctor's disputes, BOA and Chase continued to report their respective accounts to the CRAs.

27.     By December 2019, both Accounts had past-due balances in excess of their respective credit limits.

28.     By December 2019, both Accounts were reported to the CRAs as charged-off accounts, with BOA reporting $2,250 owed and past-due and Chase reporting $1,250 owed and past-due.

29.     Around April 2022, Ms. Proctor disputed Chase's information to Experian, stating the account did not belong to her and was opened without her knowledge or permission.

30.     Experian, upon receipt of Ms. Proctor's dispute, sent Chase an *Automated Consumer Dispute Verification* Request ("ACDV") through a system

known as e-OSCAR, requesting that Chase make a reasonable investigation into the dispute.

31. Chase responded to the ACDV and indicated that the Chase Account belonged to Ms. Proctor, and that no change to its reporting of any kind should be made.

32. Chase failed to instruct the CRAs to report a Metro 2 Compliance Condition Code ("CCC") of "XB" meaning "account information disputed by consumer," or even "XC" ("completed FCRA investigation—consumer disagrees").

33. Failing to report a CCC of "XB" or "XC" has significant consequences for the consumer, including the fact that many consumer credit scores, including almost all versions of FICO®, the most commonly-used credit scores in the nation, will disregard accounts credit card accounts reported with an "XB" or "XC" CCC.

34. Chase failed to conduct a reasonable investigation into Ms. Proctor's dispute, as any reasonable investigation would have concluded the Account was the result of identity theft, and at the absolute minimum, needed to be updated as disputed.

35. Ms. Proctor made another dispute concerning the Chase tradeline to Equifax in May 2023, reiterating that someone stole her identity and that the account did not belong to her.

36.   Equifax, just as Experian did, sent Chase an ACDV, requesting that Chase investigate Ms. Proctor's dispute.

37.   Chase returned the ACDV on or around May 10, 2023, and indicated the fraudulent account should still be attributed to Plaintiff.

38.   However, Chase did "update" its reporting to indicate a more-recent "date of last reported update." **SEE PLAINTIFF'S EXHIBIT A.**

39.   Chase, this time around, reported some type of CCC; however, Equifax apparently removed it, as its investigation results provided to Plaintiff stated the following:

> ADDITIONAL INFORMATION:
> *Removes Compliance Condition Codes*

40.   Equifax failed to disclose to Ms. Proctor what CCC, if any, was removed.

41.   Equifax failed to disclose to Ms. Proctor why the mystery CCC was removed.

42.   Despite having received multiple disputes from Ms. Proctor stating that the account did not belong to her, Chase continued to send collection communications to Ms. Proctor.

43.   As but one example, Chase sent a collection letter to Ms. Proctor dated June 7, 2022. **SEE PLAINTIFF'S EXHIBIT B.**

44.    The letter stated, "this is an attempt to collect a debt, and any information will be used for that purpose." *Id.*

45.    Chase sent another collection letter as recently as January 30, 2024.

46.    Chase has repeatedly attempted to collect payment from Ms. Proctor on a debt it knows is disputed, that Ms. Proctor refuses to pay, and which Chase knows, or should know, is the result of identity theft.

47.    Around July 10, 2023, Ms. Proctor again disputed the Chase and BOA accounts to Equifax, again reiterating both were the results of identity theft and not her liability. **SEE PLAINTIFF'S EXHIBIT C.**

48.    Equifax's automated system sent ACDVs to Chase and to BOA.

49.    Both Chase and BOA returned the ACDVs within a few weeks, indicating no change to their reporting should occur.

50.    Neither Chase nor BOA updated its reporting to indicate the accounts were disputed. **SEE PLAINTIFF'S EXHIBIT D.**

51.    On July 14, 2023, around 7:30 a.m., Ms. Proctor went to the Hillsborough County Sheriff's Office on Faulkenberg Road in Tampa and spoke with Officer Riley Tindall about the identity theft issues she had been experiencing.

52.    Ms. Proctor explained she had disputed the accounts over the phone and via the CRAs, but, to date, no action had been taken by the CRAs, Chase, or BOA.

53.    Officer Riley Tindall wrote a report, number 2023-724492, and documented the issues concerning the BOA and Chase accounts.

54.    Around July 30, 2023, Ms. Proctor mailed disputes to Equifax, Experian, and Trans Union, stating both the BOA and Chase accounts were the result of identity theft.

55.    Ms. Proctor provided a copy of the Hillsborough County police report as supporting documentation with her disputes, as well as her full name, date of birth, Social Security number, and a copy of her Florida driver's license.

56.    On August 17, 2023, Equifax responded to Ms. Proctor that Equifax "is not blocking information you named in your request, pursuant to Section 605B(c) of the Fair Credit Reporting Act" and that in order for Equifax to block information on her report, "you need to provide proof of your identity, the specific information that is the result of identity theft" as well as a copy of the "police report regarding identity theft." **SEE PLAINTIFF'S EXHIBIT E.**

57.    In other words, despite Ms. Proctor providing the specific accounts disputed, all relevant personal information, a copy of her identification, and a copy of the relevant police report, Equifax still refused to block or remove the

information from her report because she had—supposedly—failed to provide any of these.

58.     Equifax's investigation was inherently unreasonable, as it is clear from its response that it did not even read or review the documentation or dispute.

59.     Experian responded around August 15, 2023 via e-mail to Ms. Proctor, stating, "Based on our review of your request and the information available to us, we have determined that either: your request to block was made in error, or, your request to block information was based on a material misrepresentation, or, you knowingly obtained or should have known that you obtained possession of goods, services, or moneys as a result of one or more of the transactions that you are seeking to block. Therefore, we are declining your request to block one or more of the items of information." **SEE PLAINTIFF'S EXHIBIT F.**

60.     Experian's letter makes clear it believes there are only two possibilities: either Ms. Proctor – somehow – made a request to Experian to block identity-theft related information by accident, or Ms. Proctor made material misrepresentation to the Hillsborough County Sheriff's Office, which is a criminal offense per § 837.05 Fla. Stat.

61.     Experian had no reason to believe either one of these scenarios was true.

62.     The e-mail sent to Ms. Proctor was a form letter sent to what is likely tens of thousands of consumers each year.

63.     Experian sends communications like the one it sent Ms. Proctor on August 15, 2023, as a way to dissuade consumers from attempting to exercise their rights under the FCRA to have identity-theft related information blocked from appearing on their reports.

64.     Experian also stated the reason it did not accept the Hillsborough County Sheriff's Office's police report was that "relevant information was illegible or blocked out."

65.     Ms. Proctor sent clear, legible copies of the police report and did not block anything out.

66.     Even if the report was illegible, a reasonable investigator could have simply reached out to the Hillsborough County Sheriff's Office for a legible version.

67.     Experian's investigation procedures do not allow for this type of factual follow-up on material parts of the dispute.

68.     Further, Experian's comments on the second page contradict its comments on the first page. If the report was illegible or blocked out, it could not possibly have made the conclusion indicated on page 1 that the Plaintiff was making a material misrepresentation.

69.     Officer Riley Tindall specifically stated in the police report the name of the creditor (i.e., BOA and Chase), the credit limit of the accounts, and the current balance of the accounts.

70.     At no point did Experian contact Officer Riley Tindall.

71.     The police report contained more than sufficient information for Experian to act upon.

72.     Instead, Experian informed Ms. Proctor she would need to go back to the Hillsborough County Sheriff's Office, make *another* report about an incident she had already reported, and instruct the Hillsborough County Sheriff's Office to produce a police report that met Experian's strict requirements.

73.     The FCRA, § 1681c-2(b) requires a consumer only to provide their proof of identity, a copy of an identity theft report, identification of what information relates to identity theft, and a statement from the consumer the information does not relate to any transaction by her.

74.     The Defendants had no legal right to place such additional obstacles in front of the path of consumers attempting to dispute inaccurate data, but did so anyway.[1]

---

[1] https://www.consumerfinance.gov/compliance/circulars/consumer-financial-protection-circular-2022-07-reasonable-investigation-of-consumer-reporting-disputes/

75.     Ms. Proctor provided all the information required by § 1681c-2(b) – and more – in her disputes.

76.     The FCRA, § 1681c-2(c) allows a CRA to decline to block the information disputed only if the CRA *reasonably* determines the information was requested by the consumer in error, the block requested by the consumer on the basis of a material misrepresentation of fact by the consumer relevant to the request to block, or the consumer obtained possession of goods, services, or money as a result of the blocked transaction or transactions.

77.     Experian could not have reasonably determined any of the three possibilities contemplated by § 1681c-2(c) were applicable based on the information within its possession at the time of determination.

78.     Experian did, however, send out another round of ACDVs to BOA and Chase.

79.     Experian was required by the FCRA to include all relevant information sent by the consumer to Chase and BOA, i.e., copies of the police report and her narrative explanation.

80.     Experian responded around August 17, 2023, via e-mail to Ms. Proctor, stating that the results of its investigation were complete.

81.     However, when clicking on the link provided by Experian, the "results" were that the investigation was not complete and was, despite Experian's proclamation to the contrary, still "pending." **SEE PLAINTIFF'S EXHIBIT G.**

82.     Experian later sent another email, once again stating its investigation results were finished; this time, the results indicated both the BOA and Chase accounts had been verified as accurate.

83.     Chase verified its reported data as "accurate" in response to each of these disputes.

84.     In August 2023, Trans Union responded to Ms. Proctor's dispute by stating that Trans Union "Received the identity theft block request you sent to TransUnion…. However, TransUnion at this time declines to block the information you have identified…"

85.      Trans Union went on to state that "in accordance with Section 605B of the FCRA, we have determined that your request has either a) been made in error, b) a misrepresentation of material fact relevant to the request to block and/or c) you have obtained possession of goods, services, or money as a result of one or more of the transaction at issue."

86.     Despite Ms. Proctor providing the specific accounts disputed, all relevant personal information, a copy of her identification, and a copy of the

relevant police report, just like Equifax and Experian, Trans Union refused to block the information from her report, as required by the FCRA.

87.   The first of the three potential reasons stated by Trans Union for it to decline to block the information on Ms. Proctor's report – that the request was made in error – clearly and obviously did not apply, as it would be absurd to conclude that a consumer who sends over 20 pages of information by postal mail, that includes an official police report, to Trans Union methodically detailing her issue with identity theft "accidentally" mailed these documents to Trans Union and didn't *intend* to request the items to be blocked.

88.   Thus, Trans Union either (a) believed that Ms. Proctor made a material misrepresentation in her dispute, or (b) obtained possession of goods, services, or money as a result of the transactions.

89.   Trans Union did not indicate to Ms. Proctor what, if anything, it deemed to be a material misrepresentation.

90.   Trans Union had no objective evidence in its possession from a source outside of the respective data furnishers indicating that the Plaintiff received any good, services, or money as a result of the transactions.

91.   Thus, Trans Union had no reason, pursuant to the FCRA, § 1681c-2(c), to reasonably believe any of the three prescribed reasons it could reject Ms. Proctor's request to block information had been met.

92.    Ironically, Trans Union also included another letter stating in part "We understand identity theft can be a scary issue, and we're here to help," and went on to explain Ms. Proctor has the right to "block fraudulent information from your report," and to contact Trans Union for assistance with this.

93.    Trans Union sent ACDVs to both BOA and Chase approximately two weeks later.

94.    Both BOA and Chase verified their reporting as accurate and made no material change to the data they furnished to Trans Union.

95.    Ms. Proctor mailed a follow-up dispute in September 2023.

96.    Trans Union responded on or about October 4, 2023 with the identical, boilerplate rejection notice it has sent the previous month. **SEE PLAINTIFF'S EXHIBIT H.**

97.    Trans Union sent ACDVs to both BOA and Chase on or around October 10, 2023.

98.    Both BOA and Chase verified their reporting as accurate and made no material change to the data they furnished to Trans Union. **SEE PLAINTIFF'S EXHIBIT I.**

99.    Trans Union's letters prominently state at the top "Our goal is to maintain complete and accurate credit information. It's our commitment to you."

100.    As evidenced by Trans Union's actions concerning Ms. Proctor, this is clearly not the case.

## CRA's Investigations Were Not Reasonable

101.    The FCRA requires that each CRA conduct its own investigation of a consumer dispute. 15 U.S.C. § 1681i.

102.    Thus, upon receipt of Ms. Proctor's disputes of the Chase tradeline, Experian, Equifax, and Trans Union were each legally required to investigate the dispute.

103.    However, each CRA relied solely upon the ACDVs furnished to Chase and/or BOA, and the responses thereto.

104.    For at least the last 35 years, courts in this district have recognized that a CRA must make some independent reinvestigation of its own. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

105.    The CRAs' dispute resolution systems are structured to trust data furnishers over consumers when the two parties provide conflicting information.

106.    The CRAs generate revenue by charging data furnishers to report accounts.

107.    As a result, consumers like Ms. Proctor are left in a scenario where the only way to have their credit report corrected rests on their ability to disprove a negative. In this case, that she never caused the transaction to occur.

108.    Equifax, Experian, and Trans Union each failed to conduct a reasonable investigation into Ms. Proctor's disputes, as any reasonable investigation would have concluded that Ms. Proctor's identity was stolen and that the Chase and BOA Accounts did not belong to her, or at a minimum, that the Accounts were still disputed.

109.    Plaintiff submitted a police report indicating the information was the result of fraud, an action which, if false, would carry significant legal repercussions.

110.    The data furnishers who opposed her position did not provide any statement or evidence which carries the same weight as this police report.

111.    The FCRA, § 1681c-2(a), requires a CRA to "block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft" within four business days, provided the CRA has received proof of identity of the consumer, a copy of the identity theft report, and a statement from the consumer the information reported is not related to any transaction made by the consumer.

112.    All three CRAs received copies of the police report, copies of personal identification, and a clear statement Ms. Proctor was not involved in any transaction relating to the Chase or BOA Accounts, as well as identification of the fraudulent account.

113.    Thus, the CRAs were *required* by the FCRA to block (e.g., delete or suppress) the Chase and BOA tradelines from Ms. Proctor's file, but did not, and failed to do so repeatedly.

114.    All three CRAs allowed Chase and BOA to continue to report the fraudulent Accounts, monthly, without so much as notice the Accounts were actively disputed by Ms. Proctor.

115.    The Chase and BOA Accounts are the only negative or adverse accounts reporting in Ms. Proctor's Equifax, Experian or Trans Union credit files.

116.    Ms. Proctor has otherwise excellent credit, stable finances, and a good employment history.

117.    In November and December 2023, Ms. Proctor applied for a home loan to finance the purchase of the house she is currently renting and was offered the opportunity to buy.

118.    Ms. Proctor's mortgage lender obtained credit reports from Equifax, Experian and TransUnion.

119.    All three CRAs listed "serious delinquency" as the top reason her FICO® scores were not higher.

120.    No other "serious delinquency" besides the BOA and Chase charge-offs reported to her credit.

121.    The charge-offs lowered Ms. Proctor's FICO® scores by an estimated 90 points.

122.    Because of the negative effect the Chase and BOA charge-offs are having to her credit scores, Ms. Proctor was advised by her mortgage broker that she could not be approved on the most favorable terms.

123.    As a result, Ms. Proctor has elected to mitigate damages (e.g., additional hard credit inquiries) by not applying for credit she is otherwise well-qualified for, and has thus suffered an impaired ability to obtain credit and services, as well as economic losses.

124.    Ms. Proctor has spent considerable time as direct result of these inaccurate, fraudulent and purportedly non-disputed tradelines haunting her report: making an appointment at the Hillsborough County Sheriff's Department, reporting her case to Officer Tindall, obtaining the aforementioned report to mail to each of the CRAs, repeatedly disputing the information with the requisite information, and investigating alternative ways to deal with the issue since disputes pursuant to the FCRA have failed.

125.    Ms. Proctor has also suffered emotional distress from this frustrating and protracted series of events.

126.    Even complying fully with the FCRA's requirements, something that in and of itself takes a significant amount of time, Ms. Proctor has been given the run-around by all three CRAs and data furnishers.

127.    Ms. Proctor has delayed or abandoned financial and credit opportunities, experienced stress, lost sleep, and has had to face third parties who were told she doesn't pay her debts. Not of this would have occurred had the Defendants complied with the FCRA duties imposed upon them.

128.    Ms. Proctor has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
## Chase Only

129.    Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

130.    Chase violated **15 U.S.C. § 1681s-2(b)** when it failed, on at least six separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Account from Experian, Equifax and/or Trans Union, as any reasonable investigation would have concluded that the Account could not be verified as accurate, as it did not belong to Ms. Proctor, or at a minimum, that the Account was still disputed by Ms. Proctor.

131.    Chase's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

132.    Chase's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Proctor.

133.    Accordingly, pursuant to 15 U.S.C. § 1681n, Chase is liable to Ms. Proctor for the greater of her actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Chase for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Proctor's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT II
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
## Chase Only
## In the Alternative to Count I

134.   Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

135.   Chase violated **15 U.S.C. § 1681s-2(b)** when it failed, on at least six separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Account from Experian, Equifax and Trans Union, as any reasonable investigation would have concluded that the Account could not be verified as accurate, as it did not belong to Ms. Proctor, or at a minimum, that the Account was still disputed by Ms. Proctor.

136.   Chase's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

137.   Chase owed Ms. Proctor a legal duty to reasonably investigate her disputes.

138.   Chase breached this duty when it verified its reported information as accurate, and without indicating Ms. Proctor disputed the information.

139.   Chase's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Chase is liable to Ms. Proctor for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Chase for:

a.      Ms. Proctor's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

## COUNT III
## WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
## Experian Only

140.    Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

141.    Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into disputes of the Chase and BOA tradelines by Ms. Proctor, since any reasonable investigation would have concluded that the Chase and BOA accounts did not belong to Ms. Proctor and should no longer report to her credit, or at a minimum, that the Accounts were still disputed by Ms. Proctor and should report as such.

142.    Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

143.    Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Proctor.

144.    Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Ms. Proctor for the greater of her actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Experian for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Proctor's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT IV**
**NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)**
**Experian Only**
**In the Alternative to Count III**

145.    Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

146.   Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into disputes of the Chase and BOA tradelines by Ms. Proctor, since any reasonable investigation would have concluded that the Chase and BOA accounts did not belong to Ms. Proctor and should no longer report to her credit, or at a minimum, that the Accounts were still disputed by Ms. Proctor and should report as such.

147.   Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

148.   Experian owed Ms. Proctor a legal duty to reasonably investigate her disputes.

149.   Experian breached this duty when it verified the Chase and BOA accounts as accurate, and without indicating Ms. Proctor disputed the information.

150.   Experian's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Experian is liable to Ms. Proctor for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Experian for:

a.    Ms. Proctor's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper.

### COUNT V
### WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
### Trans Union Only

151.  Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

152.  Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least three separate disputes of the Chase and BOA tradelines by Ms. Proctor, since any reasonable investigation would have concluded that the Chase account did not belong to Ms. Proctor and should no longer report to her credit, or at a minimum, that the Accounts were still disputed by Ms. Proctor and should report as such.

153.  Trans Union's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

154.  Trans Union's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to

make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Proctor.

155.   Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to Ms. Proctor for the greater of her actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.   The greater of statutory damages of $1,000 per incident or Ms. Proctor's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT VI
## NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
## Trans Union Only
## In the Alternative to Count V

156.   Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

157.   Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least three separate disputes of the

Chase and BOA tradelines by Ms. Proctor, since any reasonable investigation would have concluded that the Chase account did not belong to Ms. Proctor and should no longer report to her credit, or at a minimum, that the Accounts were still disputed by Ms. Proctor and should report as such.

158.    Trans Union's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

159.    Trans Union owed Ms. Proctor a legal duty to reasonably investigate her disputes.

160.    Trans Union breached this duty when it verified the Chase and BOA accounts as accurate, and without indicating Ms. Proctor disputed the information.

161.    Trans Union's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Trans Union is liable to Ms. Proctor for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.    Ms. Proctor's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

## COUNT VII
## WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
## Equifax Only

162.   Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

163.   Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least two disputes of the Chase and BOA tradelines by Ms. Proctor, since any reasonable investigation would have concluded that the Chase and BOA accounts did not belong to Ms. Proctor and should no longer report to her credit, or at a minimum, that the Accounts were still disputed by Ms. Proctor and should report as such.

164.   Equifax's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

165.   Equifax's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Proctor.

166.    Accordingly, pursuant to 15 U.S.C. § 1681n, Equifax is liable to Ms. Proctor for the greater of her actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Equifax for:

a.    The greater of statutory damages of $1,000 per incident (for a total of $2,000, based on information pled at the time of filing) or Ms. Proctor's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT VIII**
**NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)**
**Equifax Only**
**In the Alternative to Count VII**

167.    Ms. Proctor hereby incorporates paragraphs 1 – 135 as if fully stated herein.

168.    Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least two disputes of the Chase and BOA tradelines by Ms. Proctor, since any reasonable investigation would have

concluded that the Chase and BOA accounts did not belong to Ms. Proctor and should no longer report to her credit, or at a minimum, that the Accounts were still disputed by Ms. Proctor and should report as such.

169.    Equifax's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

170.    Equifax owed Ms. Proctor a legal duty to reasonably investigate her disputes.

171.    Equifax breached this duty when it verified the Chase and BOA accounts as accurate, and without indicating Ms. Proctor disputed the information.

172.    Equifax's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Equifax is liable to Ms. Proctor for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Equifax for:

a.      Ms. Proctor's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

## COUNT IX
## WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681c-2(a)
## Trans Union Only

173.    Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

174.    Trans Union violated **15 U.S.C. § 1681c-2(a)** when it failed to block or suppress the Chase and BOA tradelines within four days of receipt of Ms. Proctor's dispute, which was submitted along with proof of her identity and an identity theft report.

175.    Instead of blocking the data, Trans Union sent Ms. Proctor, a victim of identity theft, correspondence indicating it believed she was – somehow – fabricating information or otherwise engaged in fraud.

176.    Trans Union's conduct was a result of its regular policies and procedures, which frequently disregard identity theft reports submitted along with a consumer's dispute, in favor of relying solely on the furnisher's investigation.

177.    Trans Union's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Proctor.

178.    Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to Ms. Proctor for the greater of her actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Proctor's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT X
## NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681c-2(a)
## Trans Union Only
## In the Alternative to Count IX

179.    Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

180.    Trans Union violated **15 U.S.C. § 1681c-2(a)** when it failed to block or suppress the Chase and BOA tradelines within four days of receipt of Ms. Proctor's dispute, which was submitted along with proof of her identity and an identity theft report.

181.   Trans Union's conduct was a result of its regular policies and procedures, which frequently disregard identity theft reports submitted along with a consumer's dispute, in favor of relying solely on the furnisher's investigation.

182.   Trans Union owed Ms. Proctor a legal duty to block or suppress the Chase and BOA tradelines within four days of receipt of Ms. Proctor's dispute.

183.   Trans Union breached this duty when it failed to do so, instead sending Ms. Proctor, a victim of identity theft, correspondence indicating it believed she was – somehow – fabricating information or otherwise engaged in fraud.

184.   Trans Union's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Trans Union is liable to Ms. Proctor for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.   Ms. Proctor's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

## COUNT XI
## WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681c-2(a)
## Equifax Only

185.   Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

186.   Equifax violated 15 U.S.C. § 1681c-2(a) when it failed to block or suppress the Chase and BOA tradelines within four days of receipt of Ms. Proctor's dispute, which was submitted along with proof of her identity and an identity theft report.

187.   Instead of blocking the data, Equifax sent Ms. Proctor, a victim of identity theft, correspondence indicating it believed she was – somehow – fabricating information or otherwise engaged in fraud.

188.   Equifax's conduct was a result of its regular policies and procedures, which frequently disregard identity theft reports submitted along with a consumer's dispute, in favor of relying solely on the furnisher's investigation.

189.   Equifax's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Proctor.

190.   Accordingly, pursuant to 15 U.S.C. § 1681n, Equifax is liable to Ms. Proctor for the greater of her actual damages and statutory damages of up to $1,000

for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Equifax for:

a.   The greater of statutory damages of $1,000 per incident or Ms. Proctor's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper

<u>**COUNT XII**</u>
<u>**NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681c-2(a)**</u>
<u>**Equifax Only**</u>
<u>**In the Alternative to Count XI**</u>

191.   Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

192.   Equifax violated 15 U.S.C. § 1681c-2(a) when it failed to block or suppress the Chase and BOA tradelines within four days of receipt of Ms. Proctor's dispute, which was submitted along with proof of her identity and an identity theft report.

193.   Equifax owed Ms. Proctor a legal duty to block or suppress the Chase and BOA tradelines within four days of receipt of Ms. Proctor's dispute.

194.    Equifax breached this duty when it failed to do so, instead sending Ms. Proctor, a victim of identity theft, correspondence indicating it believed she was – somehow – fabricating information or otherwise engaged in fraud.

195.    Equifax's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Equifax is liable to Ms. Proctor for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Equifax for:

a.    Ms. Proctor's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**COUNT XIII**
**WILLFUL VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681c-2(a)**
**Experian Only**

196.    Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated herein.

197.    Experian violated 15 U.S.C. § 1681c-2(a) when it failed to block or suppress the Chase and BOA tradelines within four days of receipt of Ms. Proctor's dispute, which was submitted along with proof of her identity and an identity theft report.

198.   Instead of blocking the data, Experian sent Ms. Proctor, a victim of identity theft, correspondence indicating it believed she was – somehow – fabricating information or otherwise engaged in fraud.

199.   Experian's conduct was a result of its regular policies and procedures, which frequently disregard identity theft reports submitted along with a consumer's dispute, in favor of relying solely on the furnisher's investigation.

200.   Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Proctor.

201.   Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Ms. Proctor for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Experian for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Proctor's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C.

§1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT XIV**
**NEGLIGENT VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681c-2(a)**
**Experian Only**
**In the Alternative to XIII**

202.    Ms. Proctor hereby incorporates paragraphs 1 – 128 as if fully stated

herein.

203.    Experian violated 15 U.S.C. § 1681c-2(a) when it failed to block or

suppress the Chase and BOA tradelines within four days of receipt of Ms. Proctor's

dispute, which was submitted along with proof of her identity and an identity

theft report.

204.    Experian owed Ms. Proctor a legal duty to block or suppress the

Chase and BOA tradelines within four days of receipt of Ms. Proctor's dispute.

205.    Experian breached this duty when it failed to do so, instead sending

Ms. Proctor, a victim of identity theft, correspondence indicating it believed she

was – somehow – fabricating information or otherwise engaged in fraud.

206.    Experian's conduct was therefore negligent, and pursuant to 15 U.S.C.

§ 1681o, Experian is liable to Ms. Proctor for her actual damages, as well as her

reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Proctor respectfully requests this Honorable Court to enter judgment against Experian for:

a.    Ms. Proctor's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**COUNT XV**
**VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.**
**Chase Only**

207.    Ms. Proctor adopts and incorporates paragraphs 1 – 128 as if fully stated herein.

208.    Chase violated **Section 559.72(9), Florida Statutes**, when Chase asserted a debt was legitimate when it knew it was not, in collection letters mailed to Ms. Proctor in the last 24 months.

209.    Chase had actual knowledge that the Account was incurred through identity theft, due to more than half-a-dozen disputes from Ms. Proctor and a police report.

210.    Chase is liable for the above-stated violations of the FCCPA, and Ms. Proctor is thereby entitled to actual damages, statutory damages not to exceed $1,000, plus costs and attorneys' fees.

**WHEREFORE,** Ms. Proctor respectfully requests that this Honorable Court enter judgment against Chase for:

a.      Statutory damages of **$1,000** pursuant to Section 559.77(2), Florida Statutes;

b.      Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to Section 559.77(2), Florida Statutes;

c.      Injunctive relief prohibiting Chase from trying to collect the bogus debt from Ms. Proctor;

d.      Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and

e.      Such other relief that this Court deems just and proper.

## COUNT XVI
## <u>VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.</u>
## <u>BOA Only</u>

211.    Ms. Proctor adopts and incorporates paragraphs 1 – 128 as if fully stated herein.

212.    BOA violated Section 559.72(9), Florida Statutes, when BOA asserted a debt was legitimate when it knew it was not, in collection letters mailed to Ms. Proctor in the last 24 months.

213.    BOA had actual knowledge that the Account was incurred through identity theft, due to more than half-a-dozen disputes from Ms. Proctor and a police report.

214.    BOA is liable for the above-stated violations of the FCCPA, and Ms. Proctor is thereby entitled to actual damages, statutory damages not to exceed $1,000, plus costs and attorneys' fees.

**WHEREFORE,** Ms. Proctor respectfully requests that this Honorable Court enter judgment against BOA for:

a.      Statutory damages of $1,000 pursuant to Section 559.77(2), Florida Statutes;

b.      Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to Section 559.77(2), Florida Statutes;

c.      Injunctive relief prohibiting BOA from trying to collect the bogus debt from Ms. Proctor;

d.      Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and

e.      Such other relief that this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Ms. Proctor hereby demands a trial by jury on all issues so triable.

Respectfully submitted on February 14, 2024, by:

**SERAPH LEGAL, P. A.**

*/s/ Christian E. Cok*
Christian E. Cok, Esq. (lead)
Florida Bar No.: 1032167
CCok@SeraphLegal.com
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A        Equifax Dispute Results, May 10, 2023 – Excerpt
B        Chase's Letter Attempting to Settle, June 7, 2022 – Excerpt
C        Ms. Proctor's Equifax Dispute, July 10, 2023 – Excerpt
D        Equifax Dispute Results, July 28, 2023 – Excerpt
E        Equifax Dispute Results, August 17, 2023 – Excerpt
F        Experian Dispute Results, August 15, 2023 – Excerpt
G        Experian Dispute Results, August 17, 2023 – Excerpt
H        Trans Union Dispute Results, October 4, 2023 – Excerpt
I        Trans Union Dispute Results, October 10, 2023 - Excerpt